## A06A0274. STINSON v. THE STATE.
(630 SE2d 553)

BARNES, Judge.

We granted Timothy Stinson's application for a discretionary appeal of his probation revocation. Stinson contends that the trial court erred in revoking his probation because he was not given credit for the time he spent in a Drug Court rehabilitation program. On this issue of first impression, we hold that a defendant who elects to plead guilty and undergo alternative treatment in a Drug Court program offered under OCGA § 16-13-2 (a) is not entitled to credit for time spent in treatment if he is subsequently terminated from the program and sentenced on his original crime. Thus we affirm the trial court.

This case has previously been addressed by our appellate courts regarding a different issue. In *State v. Stinson*, 278 Ga. 377 (602 SE2d 654) (2004), the Supreme Court of Georgia held that Stinson did not have a right to withdraw his guilty plea before the trial court determined whether he should be terminated from the Drug Court program. The court specifically held that Stinson's right to credit for time served in that program was not before the court. Id. at 381, n. 4. A year and a half later, that issue is squarely before us.

A brief time line provides context for considering this issue. Stinson was accused of violating the Georgia Controlled Substances Act (VGCSA) by possessing the Schedule IV drug Xanax, which is a felony. On December 8, 1998, he elected to plead guilty and undergo alternative treatment in a Drug Court program offered under OCGA § 16-13-2 (a).[1] Before doing so, the trial court advised him that if he

---

[1] That Code section provides that if a person with no previous conviction for a drug offense pleads guilty to or is found guilty of possessing an illegal drug,

successfully completed the program, he would be able to withdraw his plea and charges against him would be dismissed, but if he did not, he would be "looking at possibly 24 months — at least 20 to 24 months in a probation detention center followed by three years of probation." Stinson stipulated to the State's proffer of evidence against him, admitted that he was aware that he was agreeing to comply with all the Drug Court rules and regulations, and agreed that he was basically going to "give [his] soul to the drug court." Stinson signed a Drug Court contract, initialing each of its 17 conditions, which provided among other things that he understood that if he failed to obey the contract terms, he would "be terminated from the Drug Court and sentenced within the discretion of the court."

Stinson's adherence to the Drug Court program was inconsistent. He failed numerous drug tests, was sent from outpatient therapy to a halfway house, back to outpatient therapy, and then to another halfway house, from which he did not graduate. He represented to the trial court on numerous times that he did not want to be terminated from the program, but wanted to remain in it rather than being terminated and being put "in the system at an earlier period of time." When Stinson failed to attend a court hearing in August 2002, the trial court issued a pick-up order, and by December 31, 2002, Stinson was in custody. Drug Court treatment program employees petitioned the court to terminate Stinson's Drug Court contract for failing to report to court and for failing to complete his treatment. At a January 16, 2003 hearing on the petition to terminate the contract, Stinson moved to withdraw the guilty plea he entered on December 8, 1998, and the trial court denied his motion. After hearing evidence, the court terminated the Drug Court contract. The court then sentenced Stinson to five years on probation on the original charge of VGCSA, to serve twelve months in the detention center to be suspended upon his acceptance into the probation detention center, where he would serve twenty to twenty-four months, followed by the next twelve months on intensive probation, with credit for time served beginning that day.

Stinson appealed the revocation of his Drug Court contract, arguing that the trial court erred in denying his motion to withdraw his guilty plea, in finding that he violated his Drug Court contract,

---

the court may without entering a judgment of guilt and with the consent of such person defer further proceedings and place him on probation upon such reasonable terms and conditions as the court may require, preferably terms which require the person to undergo a comprehensive rehabilitation program, including, if necessary, medical treatment, not to exceed three years, designed to acquaint him with the ill effects of drug abuse and to provide him with knowledge of the gains and benefits which can be achieved by being a good member of society. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed accordingly.

and in failing to give him credit for the time he served in the program. On appeal, this court reversed the trial court's denial of Stinson's motion to withdraw his plea, *Stinson v. State*, 264 Ga. App. 774 (592 SE2d 141) (2003), but on certiorari the Supreme Court reversed again, holding that the trial court properly denied the motion. *State v. Stinson*, supra, 278 Ga. at 381. This court adopted the Supreme Court's holding as its own, *Stinson v. State*, 271 Ga. App. 213 (609 SE2d 167) (2005), and the case was remitted to the trial court in an order dated January 25, 2005.

Meanwhile, on September 14, 2004, the trial court entered an order releasing Stinson from custody, where he had been held since his arrest on December 31, 2002. The order stated that Stinson "through counsel is waiving any further appeal of his case," and released him from confinement at the detention center "to serve the balance of his probation sentence under the original terms and conditions. (January 16, 2003 sentence.)" Three sets of initials appear on the order following the last sentence.

On April 10, 2005, Stinson was arrested for driving under the influence, and on April 19, 2005, an arrest warrant was issued for a probation violation of his post-Drug Court VGCSA sentence. On June 21, 2005, Stinson's probation officer petitioned to revoke his probation for violating its conditions by committing a DUI. The trial court held a probation revocation hearing on July 8, 2005, revoked Stinson's probation, and sentenced him to serve two years in confinement and the balance on probation. Stinson petitioned this court for a discretionary appeal, which we granted on September 7, 2005.

On appeal, Stinson argues that the trial court had no jurisdiction over him because, under *State v. Stinson*, supra, 278 Ga. 377, his sentence was imposed when he entered his guilty plea on December 8, 1998. Thus, because the maximum sentence allowed for the crime to which he pled guilty was five years, the trial court's jurisdiction over him ended, at the latest, five years after his guilty plea, on December 8, 2003. Further, he contends he should have been given credit for all the time he spent in treatment at three halfway houses or in jail for Drug Court violations. He also asserts that the trial court erred in failing to address this jurisdictional issue on the record.

1. The State contends that Stinson waived his right to appeal this issue, as shown by the September 14, 2004 order releasing him from custody which states that he waives further appeal. According to the State's brief, the judge also noted in writing at the end of the order that the sentence began January 16, 2003, and initialed the handwritten note, as did defense counsel and the prosecutor. The probation revocation petition also notes that Stinson was sentenced during the September 2002 term.

Criminal defendants possess essentially two categories of constitutional rights: those which are waivable by defense counsel on the defendant's behalf, and those which are considered "fundamental" and personal to defendant, waivable only by the defendant. Examples of fundamental decisions which only the defendant is empowered to waive are entry of a guilty plea, waiver of a jury trial, and whether to pursue an appeal. [Cits.]

*Slater v. State*, 251 Ga. App. 620, 621 (1) (555 SE2d 8) (2001). The defendant may personally waive his right to appeal if the waiver is voluntary, knowing, and intelligent, which may be shown by either a signed waiver or through detailed questioning by the trial court. *Rush v. State*, 276 Ga. 541, 542 (579 SE2d 726) (2003). In this case, the record contains neither. While the cited cases apply specifically to a criminal defendant's right to a direct appeal, and this case involves the issue of when Stinson's sentence began to run, we think they are applicable here, particularly in light of the fact that Stinson raised this very issue in the previous appeal and neither appellate court addressed it. Accordingly, we conclude that Stinson has not waived his right to appeal the question of when his sentence began and whether he is entitled to credit for time spent in the rehabilitation program.

2. Stinson contends that the trial court had no jurisdiction over him and thus could not revoke his probation in April 2005 because more than five years had passed since he entered his guilty plea to VGCSA in December 1998, and the maximum sentence for the offense to which he pled is five years. He also argues that he was entitled to credit for time spent participating in the Drug Court program against any sentence imposed after his Drug Court termination. Finally, he argues that, at the least, he is entitled to credit for the time he spent actually confined in jail and halfway houses during his program participation.

The statute is not clear whether the legislature intended that Drug Court participation should be credited against an offender's sentence. OCGA § 16-13-2 (a) provides that upon a guilty plea and the participant's consent, the court defers further proceedings and places the participant "on probation upon such reasonable terms and conditions as the court may require. . . . Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed accordingly."

If Stinson had pled guilty as a First Offender and spent time on probation before his First Offender status was revoked, he clearly would have to be given credit for time served on probation, and could not have been given a sentence that exceeded the maximum allowed

for his offense. *Roland v. Meadows*, 273 Ga. 857, 859-860 (1) (548 SE2d 289) (2001); *Franklin v. State*, 236 Ga. App. 401, 402 (1) (512 SE2d 304) (1999). But for all its similarities, Drug Court participation is not First Offender participation. In its opinion in response to Stinson's argument that the record did not show that he was sentenced to probation under the Drug Court Act, the Supreme Court found that it did not matter, because "it is beyond dispute that the Drug Court Contract executed by Stinson provided him with the clear option of avoiding an adjudication of guilt upon his successful participation in the Drug Court Program." *State v. Stinson*, supra, 278 Ga. at 380. The court further stated:

> To hold that Stinson retained the unqualified right under OCGA § 17-7-93 (b) to withdraw his guilty plea would indeed be a complete abuse of the rehabilitative alternative of participation in the Drug Court Program. It would permit such participants after the passage of years, as in this case, and after prosecution is pragmatically impossible, to withdraw a plea of guilty and demand a trial. . . . A defendant like Stinson, who has pled guilty and utilized the benefits of a rehabilitative option in order to avoid an adjudication of guilt, may not withdraw the plea as a matter of right under OCGA § 17-7-93 (b).

Id. at 381.

The same reasoning applies to Stinson's argument that his time spent in the program is equivalent to a First Offender's time spent on probation, and thus must be credited toward the maximum five-year sentence allowed for his offense. Stinson was given the option at the beginning: (1) he could suspend his criminal case, choose to sign a Drug Court contract, and enter a rehabilitation program, or (2) he could be sentenced and begin serving his time. He chose the first option, to suspend his criminal case, knowing that if he did not complete his program, he would return to the beginning of the process and start all over. The trial court advised him that if he did not successfully complete the program, he would be subject to two years in a probation detention center followed by three years on probation. He signed the Drug Court contract and initialed the term providing that if he were terminated from the program, he would be sentenced "within the discretion of the court." According to the trial court, Stinson said numerous times that he wanted to remain in the program as opposed to being put in the system earlier. For us to hold that his sentence began running when he entered the program would constitute a "complete abuse of the rehabilitative alternative of participation in the Drug Court Program." If time spent in Drug

Court rehabilitation equals time spent serving a sentence, the choice between Drug Court and traditional sentencing is meaningless. Therefore, we conclude that the trial court did not err in revoking Stinson's probation, and affirm.

3. Finally, Stinson contends that the trial court failed to address on the record the issue of its jurisdiction over him. At the beginning of the probation revocation hearing on Friday, July 8, 2005, Stinson reserved argument until later but objected to the proceeding because his probation should have expired. The court replied that he could take it up on appeal, and to perfect the record, he could file a brief. After testimony regarding probation violations, Stinson attempted to call his former attorney to establish that the court did not have legal jurisdiction to hear the revocation, and the trial court noted that the issue was a legal one on which it did not need to hear testimony. Stinson then proffered that the testimony would show he was arrested on August 7, 1998, and remained in jail until he entered his plea on December 8, 1998. The trial court declined to hear anything further on that issue and directed Stinson to conclude his proffer in a brief or an affidavit, and then ruled immediately, revoking his probation and directing him to serve two years of his remaining sentence in prison.

As directed by the trial court, Stinson filed his objection to the probation revocation the next Monday, arguing that the court lacked jurisdiction to revoke his probation because six years and eight months had passed since he pled guilty to an offense for which the maximum sentence was five years. Stinson also filed the affidavit of the lawyer who represented him at his initial plea in December 1998. The lawyer stated that, based on his observation and experience, Drug Court participants were more closely supervised than most "regular" probationers, and that Stinson had already been confined either in jail or in a halfway house for more than 40 months.

Stinson successfully lodged his objection at the hearing, which the court implicitly overruled, and completed the record by subsequently filing his written objection and affidavit. While the better practice might have been for the trial court to rule on the record regarding its jurisdiction before revoking Stinson's probation, in light of our holding in Division 2, we hold that any error the trial court committed in failing to do so is harmless.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED APRIL 7, 2006 —
RECONSIDERATION DENIED APRIL 27, 2006 — 

*Jason R. Clark, Grayson P. Lane*, for appellant.

*Stephen D. Kelley, District Attorney, Leslie K. DeVooght, David A. Peterson, Assistant District Attorneys,* for appellee.
*James C. Bonner, Jr., Leigh S. Schrope,* amici curiae.